UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RICHARD LOPERENA,                              )
                                               )
                              *Plaintiff*,     )
                                               )
              *vs.*                            )        No. 1:19-cv-1710-JMS-MPB
                                               )
STATE OF INDIANA and INDIANA DEPARTMENT        )
OF CORRECTIONS,                                )
                                               )
                              *Defendants*.    )

## ORDER

Plaintiff Richard Loperena filed this lawsuit against the State of Indiana (the "State") and the Indiana Department of Corrections ("IDOC"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). [Filing No. 1.] The State and IDOC have filed a Motion for Summary Judgment, [Filing No. 46], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. Am. Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment

motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).  Any doubt

as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE*

*Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above.  The

facts stated are not necessarily objectively true, but as the summary judgment standard requires,

the undisputed facts and the disputed evidence are presented in the light most favorable to "the

party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home*

*Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.  Mr. Loperena's Employment

In 2007, Mr. Loperena was hired as a correctional officer at the IDOC Reception

Diagnostic Center (the "RDC"), and he served in that position until November 2018, when he was

promoted to sergeant at the Indiana Women's Prison.  [Filing No. 47 at 1.]  Throughout his

employment as a correctional officer, Mr. Loperena completed several training sessions on various

topics ranging from ethics to firearms.  [Filing No. 48-4 at 87-92.]  Mr. Loperena also served as

an instructor and trained other employees.  [Filing No. 48-1 at 40-44.]

During his employment as a correctional officer, Mr. Loperena received both positive and

negative annual performance reviews.  [Filing No. 48-4 at 16-47.]  In Mr. Loperena's 2013, 2014,

2016, and 2017 annual performance reviews, his "Overall Performance Rating" was graded as

"Meets Expectations."  [Filing No. 48-4 at 173 (Overall Performance Rating scale with five

options: Outstanding, Exceeds Expectations, Meets Expectations, Needs Improvement, and Does

Not Meet Expectations).]  In those performance reviews, Mr. Loperena was marked as exceeding

expectations in certain areas, including job knowledge, training, and organizational commitment.

[Filing No. 48-2 at 16-41.]  In 2015, however, Mr. Loperena's overall performance rating was marked as "Does Not Meet Expectations."  [Filing No. 48-4 at 46.]  Specifically, his 2015 performance review indicated that Mr. Loperena was not meeting expectations in "Interpersonal Relations," "Judgment," and "Conduct/Actions."  [Filing No. 48-4 at 42-46.]

### B.  Offensive Comments

On September 3, 2018, Mr. Loperena sent an email to Beverly Bridget[1] alleging that he was subjected to racially offensive comments by Sergeant M. Brown.  [Filing No. 46-4; Filing No. 48-2 at 2.]  In the email, Mr. Loperena states:

> I, R Loperena, am writing you in reference to an inappropriate and highly offensive statement by SGT M Brown on 9 2 2018.  At approx 1:00pm Offender Gonzales L . . . asked me to have SGT M Brown stop calling him a "wet back" and a "beaner" as he stated he is Puerto Rican.  It was clear that the Offender was Upset.  Gonzales went on to state that Puerto Ricans are American citizens not from Mexico to SGT M Brown in my presence.  I informed Sgt M Brown that this language is not something that I R Loperena, care for and he needs to stop.  At which time Sgt M Brown stated "you wet backs and beaners are all from the same place in Mexico".  Being Puerto Rican myself, I'm highly offended by his actions and comments.  This is racially charged hate speech that creates a toxic and hostile work environment for me and others.  I respectfully request that this type of behavior not be permitted in the work place moving forward.

[Filing No. 46-4; Filing No. 48-2 at 2.]  Mr. Loperena also provided information about which cameras might have captured the incident, as well as a list of witnesses.  [Filing No. 46-4; Filing No. 48-2 at 2 (identifying Officers C. Wright and S. Kaski[2] as witnesses).]  Ms. Bridget responded on September 4, 2018, stating that internal affairs would investigate the matter.  [Filing No. 46-4; Filing No. 48-2 at 2.]

---

[1] The parties do not explain who Ms. Bridget is or her role with IDOC.  From context, it appears that Ms. Bridget may work in human resources.

[2] Mr. Loperena's email lists Officer "S. Kaski" as a witness, [Filing No. 46-4; Filing No. 48-2 at 2], but Mr. Kent's Report of Investigation refers to "Officer S. Kashi."  [Filing No. 46-5 at 2.]  The distinction is immaterial, and the Court will use the spelling used by Mr. Loperena.

Following the incident with Sergeant Brown, Mr. Loperena was assigned to positions that were not supervised by Sergeant Brown. [Filing No. 46-1 at 6.] Specifically, Mr. Loperena was "moved to work in an unsupervised area in north pod for a period of time each day, and was also assigned to the sally port motor patrol." [Filing No. 46-1 at 6; Filing No. 48 at 6.]

Investigator Chris Kent was assigned to investigate Mr. Loperena's complaint. [Filing No. 46-5 at 1.] Mr. Kent first reviewed the camera footage identified in Mr. Loperena's email. [Filing No. 46-5 at 1.] Mr. Kent also interviewed Mr. Loperena, Sergeant Brown, Officer Kaski, Officer Wright, and Mr. Gonzales. During his interview with Mr. Kent, Mr. Loperena shared his version of events. [Filing No. 46-5 at 2.] Mr. Loperena added that on September 2, 2018, Sergeant Brown also asked Mr. Loperena how to translate "suck a dick" from English to Spanish. [Filing No. 46-5 at 2.] Mr. Loperena told Mr. Kent that he believes Sergeant Brown "does not care for people of color and does not want to see them succeed or be promoted." [Filing No. 46-5 at 2.]

During his interview, Mr. Gonzales told Mr. Kent: "I just want to do my time and go home and not make trouble for anyone," and that he had been called "amigo" and "essay (sic)" on occasion, but he was not sure by whom. [Filing No. 46-5 at 3.]

Sergeant Brown told Mr. Kent that he spoke several times with Mr. Loperena on September 2, 2018, but the conversations were about an open sergeant position and motorcycles. [Filing No. 46-5 at 2.] Sergeant Brown told Officer Kent that he did not speak to any offenders or Mr. Loperena in a derogatory way and he felt that he and Mr. Loperena "seemed to be having a good conversations (sic) and had no issues." [Filing No. 46-5 at 2.] Sergeant Brown stated that he did call Mr. Gonzales "essay (sic)," but did not know the term was offensive, and when Mr. Gonzales asked him not to call him that, Sergeant Brown promised he would not do it again. [Filing No. 46-5 at 2.]

5

Officer Kaski told Mr. Kent that he had seen Sergeant Brown and Mr. Loperena speaking several times, but he did not hear the content of the conversations.  [Filing No. 46-5 at 2.]  Officer Wright told Mr. Kent that he heard Sergeant Brown make a reference to "Mexican Offenders" and that Mr. Loperena "began to explain the difference between the 2 nationalities."  [Filing No. 46-5 at 3.]  Officer Wright stated that it appeared to be a normal conversation and that he did not hear anything else.  [Filing No. 46-5 at 3.]

Mr. Kent concluded that Sergeant Brown "did make a statement that could be taken a[s] derogatory to an Offender that he might not have know[n] was derogatory."  [Filing No. 46-5 at 3.]  However, Mr. Kent was unable to verify the conversation on the recorded footage, noting that "I [cannot] see a conversation take place at either time [Mr. Loperena] has given on 12pm or 1pm to substantiate the claims made by Officer Loperena against Sgt. M. Brown that he made derogatory statements to him personally."  [Filing No. 46-5 at 3.]

### C.  Mr. Loperena's Application For Sergeant

In August 2018, Mr. Loperena was selected to interview for two open correctional sergeant positions.  [Filing No. 46-1 at 2; Filing No. 46-3; Filing No. 48-4 at 49.]  "Interviews for the position of correctional sergeant are conducted by a panel of IDOC employees commonly referred to as a 'Sergeant's Board,'" which consists of a mix of existing correctional supervisors, human resources employees, and administrative staff.  [Filing No. 46-1 at 2.]  During the interviews, each applicant is asked a series of standard questions, and the Sergeant's Board members document the candidates' responses and make notes.  [Filing No. 46-1 at 3.]  In reviewing candidates, a Sergeant's Board may consider "any relevant, lawful information the panel members believe is pertinent to the selection of the ideal candidate," including years of experience, prior performance reviews, interview performance, knowledge of IDOC policies and procedures, and leadership potential.

[Filing No. 46-1 at 2.]   Generally, the Sergeant's Board indicates whether an applicant is "recommended" or "not recommended," and lists reasons for its conclusion.  [Filing No. 46-1 at 3.]  Ultimately, based at least in part on the Sergeant's Board's input, the Warden at the RDC makes the final decision on who to promote to sergeant.  [Filing No. 46-1 at 3.]

With respect to the August 2018 Sergeant's Board interviews, Mr. Loperena was one of six candidates interviewed for the two open positions.  [Filing No. 46-3; Filing No. 48-4 at 49.]  The Sergeant's Board recommended Jennifer Gregory and Eric Southworth, and marked the four other applicants—including Mr. Loperena—as "Not recommended."  [Filing No. 46-3; Filing No. 48-4 at 49.]  regarding Mr. Loperena, the Sergeant's Board noted: "The board felt he needs more on the job experience.  He presented that he was overly confident but was unable to respond to the questions with answers that would justify his exceeding sureness."  [Filing No. 46-3; Filing No. 48-4 at 49.]  As for the three other applicants who were not recommended, the Sergeant's Board stated that they too needed more experience.  [Filing No. 46-3; Filing No. 48-4 at 49.]

On August 20, 2018, after learning that he was not promoted, Mr. Loperena sent an email to human resources at IDOC in which he requested to speak about his lack of upward mobility.  [Filing No. 48-3.]  In the email, he listed seven individuals that were promoted instead of him, and an additional five individuals that were promoted and then fired.  [Filing No. 48-3.]

In September or October 2018, Mr. Loperena applied to become a Correctional Sergeant at the Indiana Women's Prison.  [Filing No. 46-1 at 7.]  He was promoted to Correctional Sergeant and transferred to the Indiana Women's Prison in early November 2018.  [Filing No. 46-1 at 7.]

**D.  Vacation Requests**

On several occasions between February and September 2018, Mr. Loperena requested vacation time off.  [Filing No. 46-1 at 7; Filing No. 48-5 at 1-5.]  Because RDC is a prison facility,

it must be staffed by a sufficient number of correctional officers at all times.  [Filing No. 46-1 at 7.]  Accordingly, the decision to grant vacation time requests is left to the discretion of IDOC supervisors, and correctional officers' requests for time off are frequently denied.  [Filing No. 46-1 at 7.]

In 2018, Mr. Loperena submitted nine requests for days off, nearly all of which were denied:

| Date of Request | Days Requested Off | Result |
|---|---|---|
| February 23 | July 19 – July 22 | Denied |
| April 4 | June 27 – June 28 | Denied |
| April 9 | June 19 – June 20 | Denied |
|  | July 16 – July 17 | Denied |
| April 14 | April 20 | Denied |
| April 30 | August 8 – August 9 | Denied |
| July 30 | August 13 – August 14 | Denied |
| September (date unspecified) | September 15 | Denied |
|  | September 16 | Approved |
| September 10 | September 14 | Denied |
| September 15 | September 19 – September 20 | Denied |

[Filing No. 48 at 5.]

### E.  EEOC Charge and Lawsuit

On September 21, 2018, Mr. Loperena filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  [Filing No. 46-7 at 1.]  In his EEOC Charge, Mr. Loperena alleged that he was "passed over for a Sergeant position in favor of less qualified and less experienced non-Hispanic applicants."  [Filing No. 46-7 at 1.]  He also alleged that when he "and his girlfriend at the time, (who works the same shift for the [IDOC]) requested days off, . . . they were told that they are not permitted to take off on the same day, even though there is no policy or rule that would forbid them to do so."  [Filing No. 46-7 at 1.]  Finally, Mr. Loperena alleged that Sergeant Brown made racist and offensive comments.  [Filing No. 46-7 at 1.]

On April 29, 2019, Mr. Loperena initiated this lawsuit.  In his Complaint, Mr. Loperena alleges that Defendants discriminated against him on the basis of his race, color, gender, national origin, and age by creating and maintaining a hostile work environment and by failing to train and promote him.  [Filing No. 1 at 3-6.]  Mr. Loperena further alleges that Defendants retaliated against him because of his complaints of discrimination.  [Filing No. 1 at 6.]  In his Statement of Claims, Mr. Loperena states that he was "passed over a promotion, denied training, and unjustly subjected to harassment because of his race, color, national origin, sex, and age," and additionally that he "was subjected to a hostile work environment, relocated to a position outside the building, was denied promotions, and was denied vacation time in retaliation for his complaints about discrimination, and that he was refused training and failed to promote him based on his race, color, sex, national [o]rigin, and age."  [Filing No. 29 at 1.]

On August 19, 2020, Defendants filed a Motion for Summary Judgment, [Filing No. 46], which is now ripe for the Court's decision.

### III.
#### DISCUSSION

### A.  Mr. Loperena's Claims

Determining precisely what claims Mr. Loperena is pursuing is difficult.  As stated above, in his Statement of Claims, Mr. Loperena appears to assert several claims:  (1) discrimination on the basis of race, color, national origin, and sex under Title VII, [Filing No. 29 at 1]; discrimination on the basis of age under the ADEA, [Filing No. 29 at 1]; (2) hostile work environment under Title VII, [Filing No. 29 at 1]; and (4) retaliation for his complaints of discrimination under the same statutes; [Filing No. 29 at 1 ("Plaintiff further intends to prove that he was subjected to a hostile work environment, relocated to a position outside the building, was denied promotions, and was denied vacation time in retaliation for his complaints about discrimination.").]

9

However, in his response to Defendants' Motion for Summary Judgment, Mr. Loperena organizes his argument section into two subsections:  "A. Race, Color, and National Origin Discrimination (Failure to Promote)"; and "B. Hostile Work Environment."  [Filing No. 48 at 7; Filing No. 48 at 11.]  He also expressly abandons his claims based on age and sex discrimination. [Filing No. 48 at 7.]

With respect to retaliation, Mr. Loperena does not use the words "retaliate" or "retaliation" in his response brief, nor do any of his arguments support a retaliation claim.  Accordingly, to the extent Mr. Loperena sought to pursue a retaliation claim, Defendants' Motion for Summary Judgment is **GRANTED** as to that claim.  *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) ("[B]ecause [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment . . . his negligence claim is deemed abandoned").  *See also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.");  *Laborers' Intern. Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (holding that arguments not presented in response to motion for summary judgment are waived);  *De v. City of Chicago*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims.").

Therefore, drawing from Mr. Loperena's Statement of Claims and his response to Defendants' motion, the Court identifies two claims that require substantive consideration:  (1) a discrimination claim under Title VII based on a failure to promote theory; and (2) a hostile work environment claim under Title VII.

### B.  Failure to Promote

Defendants argue that Mr. Loperena's failure to promote claim fails "because he cannot, and has not, demonstrated that he was more qualified than the applicants that were selected." [Filing No. 47 at 14.]  They argue that Mr. Loperena overlooks that IDOC used, and was permitted to use, subjective criteria in determining which correctional officers to promote.  [Filing No. 47 at 14.]  Therefore, Defendants contend, Mr. Loperena's belief that he was more qualified based solely on objective measures is insufficient to establish a prima facie case.  [Filing No. 47 at 14.] Defendants also argue that even if Mr. Loperena could establish a prima facie case, IDOC "had a legitimate, non-discriminatory reason" for not promoting him.  [Filing No. 47 at 12.]  They note that the Sergeant's Board articulated its reasons for recommending Ms. Gregory and Mr. Southworth and its reasons for not recommending Mr. Loperena, namely that Mr. Loperena needed more on-the-job experience and that he presented as unjustifiably confident.  [Filing No. 47 at 15.]

Mr. Loperena responds that Defendants don't deny that he "was in a protected class by way of his race, color, or national origin," nor do they deny that he was qualified for and denied the promotions at issue.  [Filing No. 48 at 8.]  He argues that even if IDOC was permitted to use subjective standards, "this does not mean that an employer . . . cannot be second guessed."  [Filing No. 48 at 9.]  Mr. Loperena argues that several objective measures "indicate that he was more qualified tha[n] [Ms.] Gregory and [Mr.] Southworth":  he passed the supervisor course; he trained Ms. Gregory and Mr. Southworth; he "had a long history of successful job performance"; he "had earned a Certificate of Appreciation for his hard work and dedication"; he "earned a Cash Spot bonus for saving the RDC money"; and he completed emergency response instructor training. [Filing No. 48 at 9.]  Mr. Loperena also argues that his supervisor, Lieutenant Muensterman, was on the Sergeant's Board, and Lt. Muensterman had recently evaluated Mr. Loperena's performance

and believed that Mr. Loperena "had an immense amount of job knowledge to draw from." [Filing No. 48 at 10.]  Mr. Loperena argues that Lt. Muensterman's performance evaluation undermines Defendants' assertion that he needed more experience and was less qualified than Ms. Gregory and Mr. Southworth.  [Filing No. 48 at 10.]

Defendants reply that Mr. Loperena fails to create a genuine issue of material fact that would preclude summary judgment. [Filing No. 49 at 8.]  They argue that although Mr. Loperena has set forth ample evidence that he was qualified for the promotion, he fails to set forth evidence that Ms. Gregory and Mr. Southworth weren't *more* qualified than he was.  [Filing No. 49 at 8.] Defendants argue that Mr. Loperena's statements that he trained Ms. Gregory and Mr. Southworth and that they were otherwise less qualified in certain areas are made without citation to evidence. [Filing No. 49 at 9-10.]  Similarly, Defendants argue that even if Mr. Loperena's assertions are true, they are merely his opinion, and he fails to explain why Mr. Loperena training Ms. Gregory or Mr. Southworth at some point in the past renders him more qualified for the promotion. [Filing No. 49 at 10-11.]  Defendants also contend that even if Mr. Loperena established a prima facie case, he fails to show that IDOC's proffered reasons for promoting Ms. Gregory and Mr. Southworth were pretextual. [Filing No. 49 at 12.]  They argue that Lt. Muensterman's evaluation was based on Mr. Loperena's knowledge, experience, and performance as a correctional officer, and was not—unlike the Sergeant's Board's focus—an evaluation of Mr. Loperena's knowledge and experience applicable or relevant to the sergeant position. [Filing No. 49 at 13-14 (noting that, unlike Mr. Loperena, both Ms. Gregory and Mr. Southworth: (1) had shadowed and/or spoken about the position with other sergeants prior to the interview; (2) had reviewed the Emergency Manual prior to the interview, which was discussed during the interview; and (3) had more detailed answers on what responsibilities they believed were placed on sergeants).]  Defendants maintain

12

that they do not dispute that Mr. Loperena "was a good correctional officer," but they argue that such a belief is not inconsistent with the Sergeant's Board's recommendation that he get more relevant, on-the-job experience.  [Filing No. 49 at 14-15.]

As a general proposition, "the singular question that matters in a discrimination case is: Whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In adopting this singular question, the Seventh Circuit in *Ortiz* dispensed with the old "direct- and indirect-framework" as it relates to the "proposition that evidence must be sorted into different piles, labeled 'direct' and 'indirect.'" 834 F.3d at 766.  However, the Seventh Circuit has not entirely done away with separate tests or methods to analyze discrimination cases, and it has stated that "the well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson*, 892 F.3d at 894.

Under the *McDonnell Douglas* framework, "to demonstrate a *prima facie* case for failure to promote, a plaintiff must produce evidence showing that: (1) [he] was a member of a protected class; (2) [he] was qualified for the position sought; (3) [he] was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." *Riley v. Elkhart Cmty. Schools*, 829 F.3d 886, 892 (7th Cir. 2016) (citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016)).  If the plaintiff establishes a prima facie case, "'[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason,' for its action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quoting *McDonnell*

13

*Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).  "When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination."  *Id.*

Here, the parties do not dispute that Mr. Loperena was a member of a protected class, and that he was rejected for the position.  In addition, because Defendants concede that Mr. Loperena was qualified, [Filing No. 49 at 8], and he was promoted to correctional sergeant at the Indiana Women's Prison approximately one month after he was denied the promotion at RDC, [Filing No. 48 at 4], he has established that he was qualified for the position of correctional sergeant.  The parties dispute whether Ms. Gregory and Mr. Southworth were better qualified than Mr. Loperena for the position.

Mr. Loperena cites to sufficient evidence to satisfy his initial burden of showing that he was more qualified than the two correctional officers promoted over him.  He notes that he received positive performance reviews, that he trained the two officers who were promoted over him, and that he had additional training and certifications that neither of the other officers had.  [Filing No. 48 at 8.]  This is sufficient evidence to satisfy Mr. Loperena's initial burden.

The burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for IDOC's decision to promote Ms. Gregory and Mr. Southworth over Mr. Loperena.  *Coleman,* 667 F.3d at 845.  Defendants contend that, after considering subjective factors, Ms. Gregory and Mr. Southworth were better candidates for the correctional sergeant positions.  [Filing No. 47 at 14.]  Specifically, they argue that Mr. Loperena did not interview well, whereas Ms. Gregory and Mr. Southworth did, and that Mr. Loperena needed more relevant on-the-job experience, while Ms. Gregory and Mr. Southworth did not.  [Filing No. 47 at 14.]  Thus, the burden shifts back to Mr. Loperena to present evidence that Defendants' reasons are pretextual.

14

"In order 'to show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (quoting *Fischer v. Avanade, Inc.,* 519 F.3d 393, 403 (7th Cir. 2008)).   As a general matter, "nothing in Title VII bans outright the use of subjective evaluation criteria." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (citing *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1170 (7th Cir. 1998)).   "Rather, a subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas* analysis." *Id.* (quotations and alterations omitted).   Thus, absent evidence that the subjective criteria were a "mask for discrimination," the use of subjective criteria in hiring or promotion will rarely result in a finding of pretext. *Id.* (citing *Denney v. City of Albany,* 247 F.3d 1172, 1185 (11th Cir. 2001)).

Mr. Loperena fails to present evidence showing that Defendants' non-discriminatory reasons were dishonest, disingenuous, or that the subjective criteria used by IDOC were a "mask for discrimination."  Instead, Mr. Loperena appears to argue that the objective factors, which he believes weigh in his favor, outweigh the subjective factors.  [Filing No. 48 at 9 ("Plaintiff had a long history of successful job performance as a corrections officer dating back to 2007.  In the years leading up to this interview, Loperena had earned a Certificate of Appreciation for his hard work and dedication, he had earned a Cash Spot bonus for saving the RDC money, he successfully completed the Emergency Response Operations QRT Instructors Re-certification Academy, and worked as a STG Coordinator.").]

But Mr. Loperena does not argue that the subjective factors were a mask for discrimination, and the Court has not identified any evidence that they were.  The Sergeant's Board promoted Ms. Gregory and Mr. Southworth and noted that both of them "[i]nterviewed well."  [Filing No. 46-3.]

The Board noted that Mr. Loperena, on the other hand, "presented that he was overly confident but was unable to respond to the questions with the answers that would justify his exceeding sureness." [Filing No. 46-3.]

The Board also made comments about the other not recommended—and non-Hispanic— candidates that were similar to its comments about Mr. Loperena. Specifically, the Sergeant's Board stated that it felt that each of the "not recommended" officers—including Mr. Loperena— needed more on-the-job experience. [Filing No. 46-3] ("Jeffrey Moseley – . . . The board felt that [Mr. Moseley] needs time to become acclimated to state corrections as an officer and to job shadow with a sergeant . . . ."; "Drew Hickox – . . . The board felt that [Mr. Hickox] needs more time as an officer and to job shadow more with a sergeant . . . ."; "Zachariah Sparks – . . . The board felt that [Mr. Sparks] needs more time as an officer and to job shadow more with a sergeant . . . ").] The factors the Board used were race-neutral and similar to subjective factors that other courts have found to not be masks for discrimination.  *See Millbrook*, 280 F.3d 1169 (holding that subjective comments that, at the interview, the plaintiff had poor communication skills, lack of eye contact, and a lack of confidence in his answers, though negative, were race neutral and not a mask for discrimination); *Reed v. Mantero School Dist. No. 5*, 59 F. App'x 868 (7th Cir. 2003) (the criteria considered by the employer in promotion decision, including that the plaintiff had a number of other time commitments, was not a team player, had minimal experience in key areas, gave answers that lacked depth, and could not give examples of how she would deal with a particular situation were not a mask for discrimination); *Gomez v. Milwaukee Area Technical College*, 2019 WL 1936740, at *4 (E.D. Wis. May 1, 2019) (the employer's notes that the plaintiff did not seem prepared for the interview and provided poor or incomplete answers were not a mask for a discrimination).

In sum, Mr. Loperena's arguments amount to a disagreement about qualifications.  He argues that Defendants incorrectly weighed the objective and subjective factors, but he does not argue that the subjective factors were dishonest or a mask for discrimination.  Mr. Loperena must do more than challenge his employer's judgment; to establish pretext, he "must present evidence that the committee members did not *believe* their own assessments of his performance."  *Gomez*, 2019 WL 1936740, at *4 (emphasis original).  *See also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 984 (7th Cir. 2001) ("[W]e do not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . . On the issue of pretext, our only concern is the honesty of the employer's explanation.") (internal alterations and quotations omitted)).  In other words, Mr. Loperena's "own belief that he was the best candidate is irrelevant to the question of pretext."  *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).  Mr. Loperena fails to present evidence showing that IDOC's proffered reasons for promoting Ms. Gregory and Mr. Southworth instead of him were pretext for unlawful discrimination.  Accordingly, summary judgment is appropriate as to his discrimination claim.

## C.  Hostile Work Environment

Defendants argue that accepting Mr. Loperena's factual allegations as true, the conditions of his work environment were not "so severe or pervasive as to create an objectively hostile work environment."  [Filing No. 47 at 15-16.]  They argue that "while [Sergeant Brown's] statements were offensive, [the] comments were made during one singular encounter and . . . there was no accompanying physical threat or humiliation," rendering them insufficient to support a claim for a hostile work environment.  [Filing No. 47 at 17.]  In addition, Defendants argue that upon learning of Mr. Loperena's Complaint, IDOC "immediately initiated an internal investigation to attempt to

determine what happened," and separated Mr. Loperena and Sergeant Brown while the investigation was ongoing. [Filing No. 47 at 18.]  According to Defendants, this prompt action protects them from liability in this case. [Filing No. 47 at 17-18.]

Mr. Loperena responds that Sergeant Brown's vulgar and racially offensive remarks are not the only evidence of a hostile work environment. [Filing No. 48 at 11.]  He argues that after he reported the incident, he was "reassigned to work in the Sally Port, Motor Patrol outer perimeter[,] and pod control," and those positions are known by officers to be a form of punishment. [Filing No. 48 at 12.]  In addition, Mr. Loperena argues that he was denied time off on ten separate occasions in 2018. [Filing No. 48 at 12.]  Mr. Loperena concludes that "[g]iven the unfavorable working conditions, denial of leave time, and racial discrimination related to the incident with Sgt. Brown, Plaintiff has pointed to numerous incidents designed to degrade and demoralize him to the point of affecting his job." [Filing No. 48 at 12.]

Defendants reply that Mr. Loperena "cites no evidence and makes no argument showing that these denials [of leave time] were anything other than routine, let alone harassment on the basis of race, color, or national origin." [Filing No. 49 at 16.]  They add that he "offers no explanation as to how these denials of leave affected his work." [Filing No. 49 at 16-17.] Similarly, Defendants argue that Mr. Loperena relies on bare, unsupported allegations that he assigned additional job duties and forced to work twelve hour shifts instead of eight hour shifts. [Filing No. 49 at 17.]  With respect to Sergeant Brown's comments, Defendants argue that the comments were made on a single day and, although inappropriate, "were not frequent, not sufficiently severe, were not accompanied by any physical threats of harm or humiliation, and Plaintiff does not state how this work environment interfered with his work performance." [Filing No. 49 at 18.]  Defendants add that Mr. Loperena fails to present evidence that the related

reassignment "was based on his race, color or national origin," or that the move "negatively impacted his work performance or generated an intimidating, hostile, or negative work environment."  [Filing No. 49 at 17.]  Finally, Defendants conclude that Mr. Loperena "wholly failed to respond" to their argument that even if the incidents complained of were sufficiently severe or pervasive, there is no basis for employer liability.  [Filing No. 49 at 19.]

Generally, "harassment which is 'sufficiently severe or pervasive to alter the conditions of . . . employment' is actionable under Title VII."  *Porter v. Erie Foods Intern., Inc.*, 576 F.3d 629, 634 (7th Cir. 2009) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)) (alterations in original).  "To survive summary judgment, an employee alleging a hostile work environment must show that: '(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability.'"  *Id.* (quoting *Williams v. Waste Mgmt. of Ill., Inc.,* 361 F.3d 1021, 1029 (7th Cir. 2004)).

In this case, the parties do not dispute that Mr. Loperena was subject to unwelcome harassment and that at least some of the harassment was based on his race.  The parties disagree, however, on whether the harassment was severe or pervasive that it altered the conditions of Mr. Loperena's employment, and on whether there is a basis for Defendants' liability.

In determining whether "the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation," courts consider "a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-07 (7th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S.

17, 23 (1993)).  The effect of the harassment on the plaintiff's work environment is tested both objectively and subjectively.  *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010).  In other words, "[t]he work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Hostetler*, 218 F.3d at 807.  In addition, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  *See also Maldonado v. Invensys Bldg. Systems, Inc.*, 157 F. App'x 904, 906 (7th Cir. 2005) (holding, in a case involving a supervisor uttering racial slurs at the plaintiff, that "a single utterance of an epithet, while offensive, is not sufficient to establish a hostile work environment"); *Washington v. American Drug Stores, Inc.*, 119 F. App'x 3, 6 (7th Cir. 2004) (holding that because the incidents of harassment, which included the use of the n-word, "were sporadic, isolated and appear unrelated, the . . . [plaintiff] failed to show that her workplace was hellish").

Mr. Loperena's hostile work environment claim is based on four events or series of events: (1) Sergeant Brown's comments; (2) Mr. Loperena's temporary reassignment to Sally Port and pod control; (3) his denied requests for time off; and (4) additional job duties.  [Filing No. 48 at 11-12.]  Turning first to Mr. Loperena's requests for time off and additional job duties, he fails to produce any evidence that other, non-Hispanic employees' requests for time off were approved or that they were not given additional job duties.  In fact, Mr. Loperena offers no evidence and no argument that his requests for time off were denied for any reason connected to his race.  Similarly, other than bare, conclusory statements that he was assigned less favorable working conditions than his white counterparts, [Filing No. 48 at 4], Mr. Loperena does not cite to or present evidence that he was assigned additional job duties because of his color, race, or national origin.

With respect to Sergeant Brown's racial slurs and other vulgar remarks, though the comments are highly inappropriate and offensive, the evidence indicates that they were isolated incidents. The comments were not physically threatening or humiliating, and they did not unreasonably interfere with Mr. Loperena's work. *See Hostetler*, 218 F.3d at 807. The witnesses identified by Mr. Loperena told Mr. Kent that Mr. Loperena's conversation with Sergeant Brown was not volatile or anything more than ordinary conversation. [Filing No. 46-5 at 2-3.] Moreover, Mr. Loperena's reassignment was temporary and designed to separate Mr. Loperena and Sergeant Brown during the investigation. [Filing No. 46-1 at 6.] Accordingly, the incidents identified by Mr. Loperena as supporting his claim for a hostile work environment were not severe or pervasive so as to alter the conditions of his work environment by creating a hostile or abusive situation. *See Hostetler*, 218 F.3d at 807.

Moreover, even if Sergeant Brown's comments and Mr. Loperena's related reassignment were sufficiently severe, "Title VII is not a strict liability statute." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009). An "employer can avoid liability for coworker harassment 'if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Id.* (quoting *Tutman v. WBBM–TV, Inc./ CBS, Inc.,* 209 F.3d 1044, 1048 (7th Cir. 2000)). The Seventh Circuit has routinely stated that "a prompt investigation is the 'hallmark of a reasonable corrective action.'" *Id.* (quoting *Lapka v. Chertoff,* 517 F.3d 974, 985 (7th Cir. 2008); *Cerros v. Steel Techs., Inc.,* 398 F.3d 944, 953–54 (7th Cir. 2005)).

Here, IDOC initiated an investigation immediately after receiving Mr. Loperena's complaint. [Filing No. 46-5.] The investigator watched all of the camera footage and interviewed all of witnesses identified by Mr. Loperena. [Filing No. 46-5.] Both Sergeant Brown and Mr. Gonzales—at whom the racial slurs were directed—stated that Sergeant Brown called Mr.

Gonzales "essay (sic)," and did not indicate that he used the slurs alleged by Mr. Loperena.  [Filing No. 46-5 at 2-3.]  Mr. Gonzales added that after speaking with the staff, he had not again been called "ese."  [Filing No. 46-5 at 3.]  Sergeant Brown added that he did not know the term was offensive and promised to not say it again.  [Filing No. 46-5 at 2.]

In sum, Mr. Loperena fails to point to evidence that the harassment he suffered was more than an isolated incident.  Similarly, he fails to show a connection between his denied requests for leave and either his color, race, or national origin or his complaints about Sergeant Brown.  Even if he had made these showings, the evidence indicates that Defendants, and particularly IDOC, took immediate corrective action that was reasonably likely to prevent (and by Mr. Loperena's own account, successfully prevented) the harassment from recurring.  Therefore, summary judgment is appropriate as to the hostile work environment claim.

## IV.
### CONCLUSION

The Seventh Circuit Court of Appeals has explained that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *Schact v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).  Mr. Loperena has not presented evidence that would allow a trier of fact to conclude that he was not promoted because of is color, race, or national origin, and he has not presented evidence sufficient to establish a hostile work environment.  For the reasons set forth above, Defendants' Motion for Summary Judgment, [46], is **GRANTED**.  Final Judgment shall enter accordingly.

Date: 11/13/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

22

**Distribution via ECF only to all counsel of record.**